UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| ELEXUS R. OCASIO, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> UNITYPOINT HEALTH – TRINITY, ) <br> UNITY HEALTHCARE, AND ) <br> UNITYPOINT HEALTH - TRINITY ) <br> MUSCATINE HOSPITAL, ) <br> ) <br> Defendants. ) <br> ) | Case No. <br><br> PETITON AT LAW AND JURY DEMAND |

## I. INTRODUCTION

1. This is a claim for legal and equitable relief alleging Defendant Unity Point Health – Trinity, UnityPoint Health – Trinity Muscatine Hospital, and Unity Healthcare ("Defendants") violated the PUMP for Nursing Mothers Act (29 U.S.C. § 218d) as stated in the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) and other common law claims.

## II. JURISDICTION AND VENUE

2. This Court has original jurisdiction of this claim pursuant to the FLSA, particularly 29 U.S.C. § 218(d).

3. Pursuant to 28 U.S.C. § 1391(b) venue for this action is proper in the Eastern Division of the Southern District of Iowa because the claim arose in this judicial district.

## III. PARTIES

4. Elexus Ocasio ("Plaintiff") is a resident of Muscatine County, Iowa and was a resident of the same during all times relevant to this Petition.

5. Plaintiff was employed with Defendant UnityPoint Health – Trinity from approximately July 2024 until approximately November 22, 2024.

6. Unity Point Health – Trinity is a regional integrated health care system that operates four hospitals located in Rock Island, Illinois, Moline, Illinois, Bettendorf, Iowa, and Muscatine, Iowa.

7. When Plaintiff was employed by UnityPoint Health – Trinity she worked at UnityPoint Health – Trinity Muscatine Hospital, located at 1518 Mulberry Ave, in Muscatine, Iowa.

8. Defendant Unity Healthcare is a domestic non-profit corporation incorporated under Iowa Code § 504 and is the legal entity that operates UnityPoint Health – Trinity Muscatine Hospital.

9. Defendants provide obstetrics and gynecological care, including comprehensive pregnancy, childbirth, and post-partum (post-childbirth) care to patients across its regional health care system.

10. Defendants provide obstetrics and gynecological care, including post-partum (post-childbirth) care to patients at the same address as UnityPoint Health – Trinity Muscatine Hospital; 1518 Mulberry Ave, in Muscatine, Iowa.

11. Defendants employ more than 50 employees.

IV. **BACKGROUND**

12. Plaintiff began working for Defendants in approximately July 2024.

13. Plaintiff worked at the emergency room arrival desk at UnityPoint Muscatine – Trinity Muscatine Hospital.

14. Plaintiff's job duties included greeting patients and checking them in to the emergency room.

15. Plaintiff's shift at the emergency room arrival desk was from approximately 3:00pm to approximately 11:00pm or 11:30pm.

16. Plaintiff also occasionally worked double shifts, which meant she was on shift from approximately 3:00pm to approximately 7:00am.

17. On August 19, 2024, Plaintiff gave birth to her son ("L.G.").

18. Plaintiff was off work from approximately August 19, 2024 until approximately October 7, 2024 to recover from giving birth and bond with her newborn son.

19. Immediately after L.G. was born Plaintiff began feeding him exclusively with her breast milk.

20. Plaintiff wanted to feed L.G. exclusively her breast milk for at least the first year of his life.

21. When Plaintiff was off work recovering from the birth of her newborn son, she produced enough of breast milk to feed him and did not need to use formula to supplement her breast milk supply.

22. Upon returning to work, Plaintiff planned to express breast milk using an electric breast pump ("pump;" "pumping") so she could continue to feed L.G. exclusively her breast milk.

23. In order to operate her electric breast pump Plaintiff had to plug it into the wall and use her hands during pumping to keep the breast flanges in position. The breast pump also had two tubes that ran from the main machine to each of the two breast flanges.

24. Plaintiff's electric breast pump had clear parts such that an observer could see her breasts while she was pumping.

25. On approximately September 30, 2024, before returning to work after giving birth, Plaintiff asked her supervisor whether she would be given time to pump while on shift.

26. Plaintiff's supervisor told her she would have time to pump while on shift but could only pump when there was another employee working the emergency room arrival desk.

27. Defendants told Plaintiff the emergency room arrival desk required a staff member at every minute.

28. Plaintiff understood that if she was the only individual working at the emergency room arrival desk, she could not leave the desk unless another employee came to work the desk while she was away.

29. For a few weeks after returning to work on approximately October 7, 2024, Plaintiff was able to pump one time while she was on shift, at approximately 6:00pm, because there was another employee at the emergency room arrivals desk until approximately 7:00pm.

30. However, Plaintiff was not able to pump a second time while on shift and would often go from 6:00pm to between 11:15pm and 11:45pm without being provided time to pump.

31. When Plaintiff worked double shifts, she would go from 6:00pm until 7:00am without being provided time to pump.

32. Plaintiff's supply of breast milk began to decrease because she was unable to pump more than once per shift.

33. Plaintiff began to purchase formula to feed L.G. because she was unable to provide enough breast milk to feed him.

34. Plaintiff was not provided a location to pump by Defendants.

35. Muscatine Hospital had a pumping room located on the second floor, but it was not available at the times Plaintiff was able to pump.

36. Plaintiff's coworker came up with the idea for Plaintiff to use a supervisor's office to pump because that supervisor worked often at the Bettendorf location, so their office was vacant. Defendants never told Plaintiff she could pump there, she just pumped there because it seemed to be the only private option.

37. Plaintiff informed her supervisor on approximately October 18, 2024, that she was experiencing issues with her breast milk supply and requested more breaks to pump at work.

38. Defendants did not provide Plaintiff more breaks to pump despite her request.

39. In approximately November 2024, less than three months after her son's birth, Defendants began denying Plaintiff breaks to pump at work entirely.

40. In approximately November 2024, less than three months after her son's birth, Defendants also began denying Plaintiff a private location to pump.

41. Defendants did not assign any employees to relieve Plaintiff from her emergency room desk duties so that she could take breaks to pump.

42. Plaintiff still wanted to feed her son breast milk, so she attempted to use portable breast pumps at work that she could use under her shirt.

43. Plaintiff attempted to use these portable breast pumps under her shirt while simultaneously working the emergency room arrival desk.

44. Plaintiff's breast milk supply decreased because Defendants did not provide her reasonable breaks to pump.

45. Because Defendants did not provide Plaintiff with reasonable breaks to pump, Plaintiff developed clogged breast ducts – a painful condition that causes lumps in the breast and prevents breast milk from flowing because the duct transporting the milk is blocked or plugged.

46. As Plaintiff's supply decreased because she did not have reasonable breaks to pump, Plaintiff experienced increased anxiety about not being able to provide enough breast milk to feed L.G.

47. The formula Plaintiff was using to supply her breast milk to feed L.G. caused him to regularly throw up and suffer from constipation.

48. On approximately November 22, 2024 Plaintiff resigned her job with Defendants because she felt she had no other choice if she wanted to continue to feed her son breast milk.

49. After the end of Plaintiff's employment on approximately November 22, 2024, Plaintiff attempted to save her breast milk supply by pumping many times a day.

50. Despite her attempts to save her breast milk supply, Plaintiff's breast milk supply dried up entirely in approximately December 2024 and she had to switch to feeding L.G. exclusively formula.

51. Plaintiff would not have resigned her job if Defendants had provided her reasonable breaks to pump.

52. Plaintiff's breast milk supply would not have dried up if Defendants had provided her reasonable breaks to pump.

53. Plaintiff would not have had to feed L.G. formula if Defendants had provided her reasonable breaks to pump.

## COUNT I

### Violation of 29 U.S.C. § 218d

54. Plaintiff incorporates Paragraph 1 through 53 as if set forth fully herein.

55. At all material times Defendants have violated the FLSA, particularly 29 U.S.C. § 218d, by failing and refusing to provide reasonable break time for Plaintiff to express milk for her nursing child 1 year after her child's birth each time she had need to express the milk.

56. At all material times Defendants have violated the FLSA, particularly 29 U.S.C. § 218d, by failing and refusing to provide a place, other than a bathroom, that was shielded from view and free from intrusion from coworkers and the public, which could be used by Plaintiff to express breast milk.

57. At all material times Defendants' acts and conduct complained of above have been intended by Defendants and willful.

## COUNT II

### Constructive Discharge

58. Plaintiff incorporates Paragraph 1 through 57 of as if set forth fully herein.

59. By denying Plaintiff reasonable break time to pump and a place, other than a bathroom, that was shielded from view and free from intrusion from coworkers and the public for Plaintiff to express breast milk, Defendants created employment conditions for Plaintiff that a reasonable person would find intolerable.

60. Defendants' actions caused Plaintiff's breast milk supply to dry up entirely, thereby creating employment conditions that a reasonable person would find intolerable.

61. Defendants took these actions with the intention of forcing Plaintiff to quit.

62. It was reasonably foreseeable to Defendants that their actions denying Plaintiff reasonable times and a location to pump would cause Plaintiff's

breast milk supply to decrease such that Plaintiff would not be able to continue her employment with Defendants and breast feed her son.

63. Plaintiff put Defendants on notice that she did not have adequate time to pump breast milk, would have to use her electric breast pumps while working the emergency room arrivals desk, and requested more time to pump on approximately October 18, 2024.

64. Plaintiff did not resign from her employment with Defendants until approximately November 22, 2024.

65. Plaintiff gave Defendants a reasonable chance to comply with 29 U.S.C. § 218d and provide Plaintiff more time to pump and a private location to pump.

66. Defendants did not provide Plaintiff reasonable breaks to pump or a private location to pump despite her request.

67. Plaintiff would not have resigned her employment with Defendants but for Defendants' failure to provide Plaintiff reasonable break times to pump and a place, other than a bathroom, that was shielded from view and free from intrusions from coworkers and the public for Plaintiff to express breast milk.

## V. RELIEF REQUESTED

Wherefore, Plaintiff prays that this Court enter the following relief:

    a. All applicable statutory and common law damages both at law and in equity, including liquidated damages;

    b. An order awarding counsel for Plaintiff's reasonable attorneys' fees and costs; and

      c. Any further relief which the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: September 24, 2025

                Respectfully Submitted,

                */s/ Emily Schott Hood*

                _____
                EMILY SCHOTT HOOD, AT0014444
                RUSH & NICHOLSON, P.L.C.
                P.O. Box 637
                Cedar Rapids, IA 52406-0637
                Telephone (319) 363-5209
                Facsimile (319) 363-6664
                emily@rushnicholson.com
                ATTORNEY FOR PLAINTIFF